# IN THE COURT OF APPEALS OF IOWA

No. 25-1215
Filed October 29, 2025

IN THE INTEREST OF C.B.,
Minor Child,

G.B., Father,
        Appellant.
_____

Appeal from the Iowa District Court for Kossuth County, Ann M. Gales, Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

Fred Blake Perkins, Emmetsburg, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Edward James Rosendahl, Estherville, attorney and guardian ad litem for minor child.

Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

A father appeals the termination of his parental rights to his son, C.B.[1]  The father challenges the sufficiency of the evidence supporting the grounds for termination, claims termination is not in the child's best interests, asserts that a permissive exception should be applied, and argues the Iowa Department of Health and Human Services failed to make reasonable efforts toward reunification. Upon our review, we affirm.

## I.      Background Facts and Proceedings

In July 2023, when C.B. was almost one year old, his family came to the department's attention upon concerns about the parents' substance use, alcohol use, mental health, and domestic violence.  C.B. was removed from the mother's custody after she was found "passed out from alcohol use" while caring for the child.[2]  The child was initially placed with the maternal grandfather.  But after a few days, the maternal grandfather advised he could no longer serve as a placement. C.B. was then placed with a foster family that is a pre-adoptive placement.[3]  The mother participated minimally in services, and she does not appeal the termination of her parental rights, so we focus on the facts as they relate to the father.

At the time of C.B.'s removal, the father was living with a friend after being charged with domestic abuse assault against the mother.  A no-contact order was entered against him, naming the mother and C.B. as protected parties, which the

---

[1] The mother's parental rights were also terminated.  She does not appeal.
[2] The mother also tested positive for amphetamines.
[3] C.B. has remained with this foster family for the duration of the proceedings.

father violated several times during these proceedings. The father admitted having a history of methamphetamine use.

The father completed evaluations, but he did not follow through with recommendations to address his mental-health and substance-use issues. He maintained he did not need mental-health counseling or medication. He "sporadically attempted [substance-use] treatment" by initiating treatment but then relapsing. He did not have housing. Even so, he was consistent with attending visits "for the most part," which took place in the community or at the sheriff's office. The father was granted an extension for reunification services following the permanency hearing which was held a year after C.B.'s removal from parental custody. After months passed without meaningful progress toward reunification, the State petitioned for termination-of-parental-rights in July 2024.

The termination hearing took place in September. The department caseworker reported that the father last used methamphetamine in July. The father entered inpatient treatment, which he successfully completed in August. His discharge report indicated he was "moderately improved" and directed him "to continue treatment in [intensive outpatient]." The father was living at an aftercare program and was on probation for his domestic-abuse-assault conviction. He reported that he had maintained his sobriety, testifying that his health had improved "[p]hysically, mentally, emotionally" after completing treatment. He stated he had "been sticking to [the 12-step] program almost religiously." The father hoped to save enough money to find a house that C.B. could live with him in "a month or two." He reported that he was signed up for a domestic abuse program and he was "open to therapy" to address his mental health, but "[i]t's just

a matter of fitting everything into [his] new-found schedule." The father maintained that he would "agree to do" "[a]nything and everything" to reunify with C.B., but he needed "time" and to be pointed "in the right direction." He requested a second extension of time to work toward reunification.

The caseworker acknowledged the father had made progress toward addressing his substance-use issues over the "[l]ast two months" but reported he had not made "a genuine effort to complete the responsibilities prescribed in the case permanency plan." The caseworker focused on the newness of his sobriety after years of addiction.[4] Specifically, she noted that the father had not "done anything for anger management, domestic violence, [and] mental health." The caseworker cited a visit when the father "became belligerent and threatened to kill himself" in the presence of C.B., requiring the visit to end early. The child "demonstrated difficulty sleeping after that" visit. The caseworker further reported that police had been needed at court hearings because the father "has become belligerent to his attorney here, calling her names." The father also sent threatening messages to the caseworker and other providers. Relating to the father's request for additional time, the caseworker opined:

> Q. . . . [D]o you have any reason to believe that were some sort of an extension of time to be granted as a result of today's hearing, that we would find ourselves in any different position than we do today? A. No. And based on [C.B.'s] age, I asked at the permanency for an extension. The extension ended up happening. It's been over a year. I don't see that any more time, if it could be granted, would benefit the situation.
> Q. And that is with the knowledge that [the father] has taken some steps recently to address some of his issues in this case. Even

---

[4] At the time of the termination hearing, the father had been sober for sixty-nine days, with thirty-three of those days spent in detox and inpatient treatment.

with that knowledge you still believe that more time here would be ineffective? A. Correct.

The department and guardian ad litem recommended termination of the father's parental rights.

The court entered an order terminating the father's rights under Iowa Code section 232.116(1)(e) and (h) (2024). The father appeals.[5]

## II. Scope and Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We give weight to, but are not bound by, the district court's fact findings. *Id.*

In our review, we use a three-step analysis: first, determine whether a ground for termination exists under Iowa Code section 232.116 paragraph (1); next, apply the best-interest framework from paragraph (2); and last, consider if any exceptions from paragraph (3) apply to preclude termination. *Id.* at 472–73.

## III. Analysis

Although the father's statement of the issue in his petition purports to challenge the statutory elements under section 232.116(1)(e) and (f),[6] the substance of his argument does not address the elements. "A broad, all

---

[5] The State requests that we dismiss the father's appeal because he failed to comply with our appellate rules relating to the deadline to file a combined certificate. We elect to proceed to the merits of the father's appeal. *See* Iowa R. App. P. 6.1202(1)(a) (allowing an appellant time to cure a default after the failure to comply with an appellate deadline and providing the court discretion to dismiss the appeal if the default is not cured); *see also Est. of Spidle v. CHI Nat'l Home Care*, No. 24-0197, 2025 WL 408175, at *1 n.2 (Iowa Ct. App. Feb. 5, 2025); *In re A.O.*, No. 20-0099, 2020 WL 4814158, at *2 n.4 (Iowa Ct. App. Aug. 19, 2020).

[6] The court terminated the father's parental rights under section 232.116(1)(e) and (h).

encompassing argument is insufficient to identify error in cases of de novo review." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Even if we generously construe the father's argument, the father testified at the termination hearing that the child could not live with him at his current residence. *See* Iowa Code § 232.116(1)(h)(4) (requiring proof by "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"). The other elements of section 232.116(1)(h) were uncontested. Accordingly, the grounds for termination were satisfied.

Next, the father claims termination is not in C.B.'s best interests because he "loves his child." In assessing C.B.'s best interests, we give primary weight "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id*. § 232.116(2). We also consider what care C.B. would receive if returned to the father. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) (citation omitted). "To determine this, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re C.C.*, No. 25-1073, 2025 WL 2658412, at *4 (Iowa Ct. App. Sept. 17, 2025) (internal quotation marks and citation omitted). Despite the father's recent efforts to address his addiction, we concur with the caseworker's opinion that termination was in C.B.'s best interests:

> He needs—permanency is important. I mean, he's young. He needs to be settled. He's been in the same home for, like I said, over a year since August 2023. We need to establish permanency. And he'll be starting school, you know, in a couple years and—it's just—it's an important piece of a child to know where they're going to be.

The father also claims his bond with C.B. should preclude termination pursuant to the permissive exception under section 232.116(3), maintaining it would be "detrimental at this time to the child" to "break those bonds." We conclude the bond between the father and C.B. is not enough to overcome termination given the child's need for stability and the ability of his current placement to provide it for him. C.B. is meeting all his developmental milestones. He is integrated with his foster family, which is a pre-adoptive placement; he relies on the foster parents to meet his needs, and as the foster mother testified, he "interacts with [his foster siblings] just like he'd be his own brother to them." Termination is in C.B.'s best interests.

The father also makes a fleeting claim that "[a]n extension of time would have been appropriate." His "cursory argument is not supported by any factual discussion or legal authority," and accordingly, it is waived. *In re A.H.*, No. 25-0730, 2025 WL 2249851, at *3 (Iowa Ct. App. Aug. 6, 2025). In any event, we concur with the district court's determination that additional time was not warranted in this case:

> Based on [the father]'s performance during the first 11 months of the CINA case, . . . the court is unable to make a finding that the need for removal of [C.B.] from his custody would no longer exist at the end of an additional six-month period. The court wishes the circumstances were different and that [the father] had made the necessary changes earlier in the case. The court appreciates that [the father] recognizes he spent too much time in this case "wallowing in self-pity, making excuses." The court hopes that [the father] has maintained his sobriety and has continued on the positive path he set for himself. This would certainly be in [C.B.]'s long-term best interests despite the outcome of this case, as life is long and most children desire contact with their biological parents as they grow older. Under the circumstances existing at the time of the termination hearing, however, the court finds that an extension of the

reunification period is unwarranted and would not be in [C.B.]'s best interests.

Finally, the father claims the department "failed to provide [him] with reasonable efforts to assist him with reunification." *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (requiring the State to "show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent" (citation omitted)). But the father did not object to the sufficiency of the services in the district court proceedings. *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding."). As the court noted:

> The parents have been advised throughout this case that they have the right, as well as the obligation, to request any additional services or assistance they need to be successful in achieving reunification. The court does not recall any requests by the parents for additional services, and none are documented in the record. Neither parent argued at the termination hearing that [the department] had failed to make reasonable efforts to reunify them with [C.B.]

We therefore do not address this claim on appeal.

## IV. Conclusion

Having addressed the issues properly before us on appeal, we affirm the termination of the father's parental rights.

**AFFIRMED.**